ST. PAUL, MINNEAPOLIS & MANITOBA RAILWAY COMPANY *vs.* CITY OF MINNEAPOLIS.

April 7, 1886.

Municipal Corporations—Power to Open Street across a Railway.— Under a city charter conferring a general power to lay out and extend streets, an authority to extend the same across the roadway of a railway corporation will, as a general rule, be implied.

Same—Prior Rights of Railway Company.—The appropriation of land occupied as such roadway for a street crossing, in such cases, is necessarily subject to the prior public use of the railway corporation, but is not ordinarily inconsistent with it.

Same—Opening Streets—Appeal from City Council.—The action of a city council in determining the necessity and propriety of extending streets in such cases, if regular, is not subject to judicial revision except upon appeal.

Same—Assessment of Damages and Benefits—Appeal.—In the assessment of damages for such street crossing, it is error to offset supposed benefits to the railway company from the opening of such street across such roadway. But where a remedy is afforded by appeal for the correction of erroneous assessments, the proceedings are not void for such cause.

Eminent Domain—Constructive Notice by Publication.—In proceedings *in rem* for the condemnation of land, and the assessment of the owner's damages therefor, it is competent for the legislature to provide for constructive notice of the proceedings to the parties interested by publication.

The plaintiff brought this action in the district court for Hennepin county, to restrain the defendant from opening a street across its tracks.   The proceedings on the part of the defendant in laying out the street and condemning the land therefor are set out in detail in the complaint, where it is also alleged that the plaintiff, although in possession of the premises, never had any actual notice of those proceedings until the city removed its fences.   Plaintiff appeals from an order by *Young* and *Lochren,* JJ., overruling a demurrer to the answer on the ground that the complaint does not state facts sufficient to constitute a cause of action.

*Benton & Roberts* and *R. B. Galusha,* for appellant.

The proceedings by the defendant were void because plaintiff had no actual notice of them.   The absence of such notice was in violation of the 14th amendment to the federal constitution.   Cooley, Const. Lim. 563; *Railroad Tax Cases,* 13 Fed. Rep. 722, 752; *County of Santa Clara* v. *Southern Pac. R. Co.,* 18 Fed. Rep. 385, 410, 426; *State* v. *City of Fond du Lac,* 42 Wis. 287, 298.

*Judson N. Cross,* for respondent.

VANDERBURGH, J.   The city council of Minneapolis have laid out, and are proceeding to open, a street across the tracks and right of way of the plaintiff corporation, within the limits of the city.   This action is brought to enjoin such proceedings.

1. The plaintiff claims that the opening of the street in question in the particular locality is unauthorized, because the land is already appropriated and used by the corporation for a public purpose, and that the proposed further public use of the land for a street would be inconsistent with, and subversive of, such prior public use.   The demurrer to the answer brings up the question as to the sufficiency of the facts alleged in the complaint to warrant the relief sought.   It is evident that the primary and principal purpose for which the land in question was acquired and is appropriated by plaintiff is for its roadway, and the passage of regular and local transfer trains.   Two tracks have been constructed, and are so used on such right of way, and, to accommodate the large and increasing business and traffic of the company, other tracks are required, and are contemplated or in process of construction, to be used "for the whole distance between

Minneapolis junction and University switch," particularly for hauling and transferring cars, and for business to and from the mills, depots, or elevators situated in the city, and for standing room for cars while awaiting transfer to points of loading and unloading.  This is a use of a roadway for which it is very natural and convenient to appropriate the railway tracks, including side tracks, in large cities, for long distances; yet it was never considered that such use was inconsistent with the right of the public to necessary street crossings over such roadway.   The mere fact that the proposed street extension will necessarily cause more or less inconvenience and expense to the plaintiff is not of itself ground for equitable interference by the court. Such consequences necessarily follow from street crossings, and would have been the same if it had happened that the street had been laid out before the railroad.   The distance from "the Minneapolis junction to the University switch" is not stated, but it is manifest from the tenor of the complaint that it must be considerable.   This is a part of the roadway used for the passage and operation of trains for traffic.   It is not ground used for depot purposes, or set apart for storing cars, or exclusively for making up trains, and the case presented does not fall within the rule laid down in *Milwaukee & St. P. Ry. Co.* v. *City of Faribault*, 23 Minn. 167.   We have found no case extending the doctrine there applied to necessary street crossings over the roadway proper of a railway corporation, though the tracks be numerous and much used.   *Boston & Albany R. Co.* v. *Village of Greenbush*, 52 N. Y. 510; *Delaware & Hudson Canal Co.* v. *Village of Whitehall*, 90 N. Y. 21.

The appropriation made by the city is, of course, subject to the prior public use; but the two uses are not necessarily inconsistent, and in all ordinary cases may stand together.   The general rule is that the power to extend streets across the right of way and tracks of a railway company is implied in the general authority conferred by city charters for such purposes, without express legislative provisions upon the subject, (*St. Paul Union Depot Co.* v. *City of St. Paul*, 30 Minn. 359; 15 N. W. Rep. 684,) and we think there is nothing in this case to take it out of the operation of such general rule. Danger and delays are necessarily incident to such crossings, but there appears to be no good reason, after all, why the two public

uses may not be so adjusted in practice as to work no serious detriment to the public interests served by the corporation, and the risk and inconvenience in large measure fall upon the travelling public using the streets crossed by railways.

In this instance, the appellant contends that the grade of the street should be raised, and the tracks bridged; but this will be a matter for the consideration of the proper authorities, if experience shall demonstrate its necessity. It is not a question which properly enters into the discussion of the case as here presented.

2. The complaint alleges that the opening and extension of the street "*in the manner complained of*" is wholly unnecessary, and is not demanded by any public requirement, and that if a street is so required, it should be constructed at such grade as to be carried over the railroad. The objection urged is rather to the manner of crossing than to the propriety of opening the street across and beyond the tracks, and it is conceded that the city council have acted on and determined the question. The council are given the general power to lay out, extend, and open streets, and it is not questioned that the proceedings in this instance have been regular, and in conformity with the provisions of the charter; and it must be presumed that the judgment of the council in respect to the necessity of the extension of the street in question was properly exercised. The most important question to be considered in such cases is whether the new use to which the railroad property is sought to be subjected by the municipal authorities is such as to be inconsistent with the prior public use. If it is not, the street may be opened under the general power to condemn conferred by the charter, and the determination and proceedings of the city council in the premises, if regular, cannot be attacked collaterally, and are not subject to judicial review, except upon appeal in the same proceeding. *Little Miami R. Co.* v. *City of Dayton*, 23 Ohio St. 510, 519. If it is inconsistent with such prior use, then there must be express legislative authority to proceed in the particular instance, or a necessary implication of such authority; and in the latter case the necessity of appropriating the particular property for the purposes of a street would have to be shown. *St. Paul Union Depot Co.* v. *City of St. Paul*, 30 Minn. 359,

(15 N. W. Rep. 684.) But the general authority to lay out and extend streets is generally held to be sufficient to warrant the action of the proper authorities in extending a street across the roadway of a railway corporation. *New Jersey S. R. Co.* v. *Long Branch Commissioners*, 39 N. J. Law, 28; *City of Bridgeport* v. *New York, etc., R. Co.*, 36 Conn. 255, 265; *Little Miami R. Co.* v. *City of Dayton*, 23 Ohio St. 510, 517. For the purposes of this case, therefore, the concession that the council have regularly laid out the street is sufficient evidence of the necessity for the same.

3. It seems that the damages assessed and allowed to the plaintiff for the appropriation of the land for the extension of the street is the sum of one dollar. This can only be accounted for on the supposition that the damages were set off against benefits assessed by the commissioners. This was clearly erroneous. It is difficult to see how plaintiff's roadway could be benefited or improved by such street crossing. But as a remedy for an erroneous assessment is provided by appeal in such cases, the same is not to be deemed void for such cause. *New York & H. R. Co.* v. *Morrisania*, 7 Hun, 652.

4. The plaintiff further complains that the notice of the condemnation proceedings, and the assessment of damages provided by the charter, and the only notice in fact given in this case, was by publication. It is certainly remarkable that in a matter so important to the interests of property holders the legislature should have made no further or more adequate provision in the charter for notice of the pendency of proceedings for the assessment of damages in this class of cases. But this was a question for the legislature, and we do not think the proceedings void because the notice provided was constructive, or by publication. The proceedings are *in rem*, and it is the rule generally recognized that in such cases the legislature may provide that the compensation due the owner of the lands taken may be ascertained upon constructive notice merely, as well as upon personal notice. 2 Dill. Mun. Corp. § 606, (471,) and cases; *Cupp* v. *Commissioners*, 19 Ohio St. 173, 182; *Owners, etc.*, v. *Mayor*, 15 Wend. 374; *People* v. *Mayor*, 4 N. Y. 419, 441, (55 Am. Dec. 266.) This rule has frequently been acted on and adopted in the legislation of this state. In the case of ordinary highways, provision is made
v.35M—10

(wisely, we think,) for service upon occupants of lands proceeded against, (Gen. St. 1878, c. 13, § 35,) but no distinction is otherwise made between residents and non-residents, whether the lands are vacant or occupied.

Order affirmed.