LOUIS J. POPE v. GREAT NORTHERN RAILWAY COMPANY.[1]

April 28, 1905.

Nos. 14,248—(48).

**Complaint—Wisconsin Statute.**

Complaint in an action wherein an employee of a railroad company seeks to recover for injuries sustained through the alleged negligence of a fellow servant in Wisconsin considered upon a general demurrer, and *held* to state a cause of action under the statutes of that state.

**Pleading.**

Statements in a complaint that an employee was engaged in doing certain acts in the due and proper performance of his duty, and was without fault, are to be given weight, in construing a pleading, to repel the inference that such servant was guilty of contributory negligence.

Appeal by defendant from an order of the district court for Ramsey county, Kelly, J., overruling a demurrer to the complaint. Affirmed.

*W. R. Begg, J. A. Murphy,* and *Heber McHugh,* for appellant.
*Samuel A. Anderson,* for respondent.

[1] Reported in 103 N. W. 331.

LOVELY, J.

This appeal is from an order overruling a general demurrer to plaintiff's complaint in an action wherein he seeks to recover for injuries claimed to have been sustained through the alleged negligence of a fellow servant in defendant's yard at Superior, Wisconsin. The challenged pleading set forth in detail the history of the accident, but it is only necessary on this review to summarize the essential facts stated therein, with the conditions upon which, as defendant insists, it shows that plaintiff contributed to his own injury.

It appears therefrom that defendant was operating a yard at Superior, adjoining Allouez Bay, where there were docks to which the railway tracks ascended on a rising grade. Plaintiff was a switchman belonging to a crew of five men, composed of an engineer and fireman working on the engine, another switchman, and also a foreman, under whose immediate direction a train of thirteen ore cars were to be pushed by the engine in charge of the engineer upon one of the docks (numbered 2). The engine and cars were equipped with air, whereby, when the same was working in proper condition, the engineer could instantly cause all the brakes on the train to be set and its movements stopped. It is set forth that it was the duty of the foreman on the morning of the day in question, before moving the train to the dock, to test the air by contrivances placed upon each car for that purpose, to ascertain that they were suitable for use. Each one of the freight cars of the train was likewise equipped with hand brakes, which were in good working order. On the occasion in question signals were properly given to move the train upon the dock (No. 2), which were obeyed, and the train pushed up the grade. The foreman and plaintiff discovered, however, while the train was in motion, that one of the switches connected with another dock (No. 3) was improperly set, when plaintiff, in the due and proper performance of his duty, as alleged, stepped from the train, and moved hastily ahead in front of the cars to properly turn and adjust this switch. At this time the train was moving slowly —at the rate of six miles an hour. Plaintiff reached a point two hundred feet ahead of the cars, and then attempted to pass in front to reach the switch he was to operate on that side of the track; but, owing to impediments and pieces of ore on the track, his left foot was caught between the ties, he fell and the remainder of his body was extended

outside the track as the train continued to slow down to four miles an hour. In the meantime plaintiff, on the ground, signaled to the foreman, who was standing on the ore cars, to stop. The foreman, recognizing the signal as well as plaintiff's peril, transmitted it to the engineer, who applied the air, which worked upon all except the three cars nearest the plaintiff, and these continued to move forward by reason of the momentum already acquired. The plaintiff continued to call to the foreman to stop, but the foreman negligently omitted to set the hand brakes on the three cars which were not controlled by air until they ran upon plaintiff, when they stopped of their own inertia. In addition to the allegation that it was the duty of the foreman to test the air by means of the contrivances referred to, it is specifically stated that he failed and neglected to perform this duty, by reason of which neglect the air brakes on the three cars nearest the plaintiff, which were defective, were not discovered. In consequence of the injuries received, plaintiff's left leg was so badly mangled that its amputation was required.

While the complaint is more full in its specific details, the summary above given is as sufficient a description of the accident as seems to be necessary, and contains no qualification which diminishes the practical effect of the alleged fault of the foreman in failing to test the air previous to the movement of the train, or his alleged neglect to recognize and act upon the plaintiff's call for help, or failure to set the hand brakes upon the cars which ran upon and injured plaintiff; nor does it to any extent admit or concede that plaintiff was wanting in the exercise of ordinary care, but asserts in express terms that he was without fault, and engaged in the due and proper performance of his duty.

A statute of Wisconsin which was in force at the time is properly pleaded, and, so far as applicable and material, is in the following terms:

> Every railroad company operating any railroad which is in whole or in part within this state shall be liable for all damages sustained within the same by any of its employees without contributory negligence on his part. * * *

> 2. When such injury is sustained by any officer, agent, servant or employee of such company while engaged in the line of

his duty as such, and which shall have been caused by the carelessness or negligence of any other officer, agent, servant or employee while in the discharge of or for failure to discharge his duty as such, provided that such injury shall arise from a risk or hazard peculiar to the operation of railroads, no contract, receipt, rule or regulation between any employee and a railroad corporation shall exempt such corporation from the full liability imposed by this section.

The service in which plaintiff was engaged subjected him to railroad hazards, and there can be no doubt, under a reasonable application of the statute quoted, that the defendant was liable for the injuries sustained by plaintiff, unless the contention of defendant is correct—that the facts pleaded disclose such want of care as would transfer the responsibility for the accident from the defendant to plaintiff himself—and we are unable to adopt this conclusion, which has been very strenuously insisted upon by counsel. It is quite easy, in reading the complaint, to imagine or conjecture precautions that might have been adopted by the plaintiff to have avoided the unfortunate result which occurred.

It is suggested that plaintiff should have waited for the cars to stop before passing in front of them; that the obstructions on the track were in plain sight, and could have been avoided by reasonable care. While it would have been safer to have waited for the train to stop, we doubt if it can be said, as a matter of law, that it is an imperative duty of a switchman attending upon the making up of a train to avoid passing in front of it when in motion. It is doubtful if such a servant would be retained in the employ of the company if he were to do so. What the effect of such dilatory action on his part might have been upon the movements of the train or the safety of other employees in this case may have an important bearing upon the conduct of the employee in this respect. Expedition in the business is always required in this occupation, and the duty of the servant is not to be determined by the view of a court ordinarily upon demurrer in an issue of this character. If the movements of switchmen in conjunction with the operation of trains are to be regulated by fixed rules, this will have to be done by the legislature, rather than the courts.

Whether the obstructions on the track which impeded plaintiff's progress across the same, and caused his prostration thereon, were observable, might depend upon other circumstances than disclosed on the face of the complaint; and the authorities which defendant relies upon we find, upon examination, to be in cases decided upon their merits after trial and production of the facts in evidence. The allegations that the plaintiff was without fault, and that he was in the due performance of his duty, are not to be regarded in such cases as legal conclusions. The conduct of every operator in the railroad yards in the making up of trains depends upon many circumstances and conditions, and little more can be said in characterizing the duty of these servants than that it has been duly performed, and they were without fault; hence such allegations must be treated, from necessity, as statements, to a certain extent, of ultimate facts. Clark v. Chicago, M. & St. P. Ry. Co., 28 Minn. 69, 9 N. W. 75.

It seems very clear that the averment of care and duty on the part of the plaintiff was properly pleaded, and raises an issue of fact sufficient to put the defendant on its defensive showing in this respect.

Order affirmed.